IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROCK HILL DAIRY, LLC,

                Plaintiff,                OPINION AND ORDER

   v.

                                                 19-cv-845-wmc

GENEX COOPERATIVE, INC., and
ALTA GENETICS, INC.,

                Defendants.

Plaintiff Rock Hill Dairy, LLC ("Rock Hill") brings claims against defendants Genex Cooperative, Inc. ("Genex") and Alta Genetics, Inc. ("Alta") arising out of two contracts for the sale of individual bulls. According to plaintiff, defendants are not only liable for breach of contract, but for seven other related causes of action. Defendants have moved to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted under Federal Rule of Civil Procedures 12(b)(6). (Dkt. #20.) For the reasons discussed below, defendants' motion will be granted, although plaintiff will be given the opportunity to amend some of its claims.

ALLEGATIONS OF FACT[1]

Plaintiff Rock Hill breeds bulls for sale, as well as sells related insemination goods and services. (Compl. (dkt. #1-2) ¶ 4.) In 2017, Rock Hill and defendant Genex entered into a contract for the sale of a bull named S-S-I Montross Jedi Et and related insemination

---

[1] For purposes of defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

goods and services. (*Id.* ¶ 5.) This "Genex contract," which plaintiff attached to its complaint, states in part that the seller (here, Rock Hill) agrees to sell the bull and buyer (Genex) agrees to pay the seller: "$50,000 at the time the bull enters BUYER'S facilities and registration has been transferred to buyer"; "$100,000 when 500 units of freezable conventional semen passing GENEX lab quality standards is collected"; and "$325,000 when the bull is activated to GENEX available sire lineup." (Compl., Ex. 1 (dkt. #1-2) 9.) So long as Rock Hill delivered the agreed-upon goods to Genex, Genex represented that it would pay in accordance with the contract. (Compl. (dkt. #1-2) ¶ 6.) The contract further states, "It is understood that all decisions of marketing or removal of the bull from the stud will rest solely with the BUYER. Neither PARTY will be held liable or guarantees any unrealized economic benefit." (*Id.* at 10.) Finally, under its terms, the contract is governed by Wisconsin law. (*Id.*)

Relying on the contract terms and Genex's representations, Rock Hill delivered the bull and rights to its related insemination goods and services to Genex. (*Id.* ¶ 6.) After delivery and acceptance, Genex sold its business to defendant Alta. (*Id.* ¶ 7.) Rock Hill alleges that "[a]t the time of the sale, Defendants both owned and possessed the goods and therefore both Defendants are liable for the contracts price." (*Id.*) Alternatively, Rock Hill alleges that "because Defendant Alta continued to possess the goods and was liable for performance of the remainder of the executory contract, Defendant Alta assumed Defendant Genex's liabilities under the contract." (*Id.* ¶ 8.)

In addition, Rock Hill entered into a second, separate contract with defendant Alta directly for the sale of a bull named AltaLonzo and "its associated property." (*Id.* ¶ 9.)

2

This "Alta contract," also attached to the complaint, states that "[t]he owner [Rock Hill] grants to ALTA the option to purchase" the bull AltaLonzo, and that the purchase price for the bull "shall be a cash payment of $34,512.00 USA dollars OR a Peak credit payment of $43,140.00 USA dollars." (Compl., Ex. 2 (dkt. #2-1) 11.) The Alta contract further states that: (1) "[a] one-time cash payment of $165,488.00 USA dollars will be paid after Release of the Said Bull for public sale"; and (2) "ALTA may choose not to exercise their option to purchase or Release the Said Bull for any reason." (*Id.* at 11, 12.) The contract also explains that "to *Release* the Said Bull shall mean the semen for the Said Bull is distributed to Alta customers, for the purpose of progeny testing the Said Bull." (*Id.* at 12.) Finally, unlike the Genex contract, the Alta contract states that it "shall be governed by and construed in accordance with the laws of Canada and the province of Alberta." (*Id.*)

According to plaintiff Rock Hill, "[a]fter Defendants accepted the good, Defendants, or any combination of them, made a partial payment" pursuant to the contracts, but then "failed to perform [their] remaining obligations under the contracts," despite Rock Hill's complete performance. (Compl. (dkt. #2-1) ¶¶ 10-11.) Defendants Genex and Alta also failed to return the bulls and insemination goods and services to Rock Hill, preventing plaintiff from mitigating its damages by "use of the goods." (*Id.* ¶ 12.)

In its complaint, Rock Hill alleges eight causes of action against defendants Genex and Alta: (I) breach of contract; (II) breach of the implied covenant of good faith and fair dealing; (III) violation of unfair trade practices under New Mexico Statutes § 57-12-3; (IV) breach of fiduciary duty; (V) debt and money due; (VI) violation of the uniform commercial code; (VII) estoppel; and (VIII) negligent misrepresentation. (*Id.* at 4-8.)

3

OPINION

Under Rule 12(b)(6), dismissal is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not provide detailed factual allegations, but must provide "enough facts to raise [the claim] above the level of mere speculation." *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009). In reviewing the sufficiency of a complaint under the plausibility standard, the court will accept the well-pleaded facts in the complaint as true, but "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Moreover, exhibits or documents attached to a complaint are considered part of the pleadings, and they may be considered on a motion to dismiss for failure to state a claim. *See Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) (citing *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988); Fed. R. Civ. P. 10(c)).

At the outset, the court addresses the substantive law to be applied to this case. As noted, both the Genex and Alta contracts contain choice-of-law provisions, applying the law of Wisconsin and the law of Alberta, respectively. Defendants assert that these choice-of-law provisions should be enforced as to plaintiff's four, so-called "contract claims" -- breach of contract, breach of the implied covenant of good faith and fair dealing, debt and

money due, and violation of the Uniform Commercial Code.  (Def.'s Br. (dkt. #21) 7 n.5.)  As to the remaining claims, defendants assert that the application of choice-of-law rules dictates that Wisconsin law applies.  (*Id.* at 12 n.9.)  Plaintiff does not dispute either assertion and follows defendants' lead in applying Alberta law to the "contract claims" related to the Alta contract and Wisconsin law to the remaining claims.  "Where the parties agree on the law that governs a dispute, and there is at least a 'reasonable relation' between the dispute and the forum whose law has been selected by the parties, '[this court] will forego an independent analysis of the choice-of-law issue and apply [the parties' choice].'" *Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (quoting *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 231 n.5 (1st Cir. 1993)).  Accordingly, the court will not disturb the substantive law assigned by the parties and argued in their briefs.

## I. Breach of Contract

To state a claim for breach of the Genex contract under Wisconsin law, plaintiff Rock Hill must allege "(1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach." *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 801 (W.D. Wis. 2006) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 296, 187 N.W.2d 200 (1971)).  Similarly, to state a claim for breach of the Alta contract under Alberta law, a plaintiff must allege "that a contract existed; that [plaintiff] performed his contractual obligations; that [defendant] failed to perform its contractual obligations; and that [plaintiff] suffered damages." *Warner v. Nutrien, Ltd.*, 2018 U.S. Dist. LEXIS 209531, *12-13 (D. Colo. Dec. 12, 2018) (citing *Rocky Mountain House (Town) v. Alberta Mun. Ins. Exch.* (2007), 79 Alta.

5

L.R. 4th 141, at ¶ 17 (Can. Alta. Q.B.)). Defendants do not appear to dispute that plaintiff has alleged sufficient facts to show the existence of either contract, plaintiff's performance of its contractual obligations, or damages. Accordingly, the following discussion focuses on the only contested element: a causal breach.

To begin, the court will address plaintiff's general response to the motion to dismiss: by simply asserting that the defendants breached the contracts, it has satisfied the liberal pleadings requirements under the Federal Rules of Civil Procedure. (*See* Pl.'s Opp'n (dkt. #31) 8-9.) Certainly federal pleading standards do not require "detailed factual allegations," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to support a cause of action. *Ashcroft*, 556 U.S. at 678. A mere allegation that defendants "breached the contracts" is, therefore, not sufficient to support a claim for breach. *See Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) ("A plaintiff may not escape dismissal on a contract claim . . . by stating that he had a contract with the defendant, gave the defendant consideration, and the defendant breached the contract."). Nevertheless, plaintiff's complaint does contain two, more specific allegations regarding the nature of defendants' claimed breach, which the court will address.

The complaint alleges that defendants made only "a partial payment pursuant to the contract" and also that defendants "failed to perform its remaining obligations under the contracts." (Compl. (dkt. #1-2) ¶¶ 10, 11.) Both contracts provided for an initial payment upon receipt of the bull and additional payments conditioned on certain future events. While the allegations in the complaint *could* be understood to mean that

defendants failed to pay even the *initial* payments for receipt of the bulls, however, plaintiff does not pursue that argument in its brief. To the contrary, defendants specifically represented in their opening brief that plaintiff conceded defendants made the initial payments called for by the contracts (Defs.' Br. (dkt. #21) 9), and plaintiff did not dispute this. Instead, plaintiff clarified that defendants' failure to make the *additional* payments amounted to breach. (Pl.'s Opp'n (dkt. #31) 7-9.) Regardless, "when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (citing *Teumer v. General Motors Corp.*, 34 F.3d 542, 545-46 (7th Cir. 1994)). Thus, since plaintiff has not argued, the court will not infer that defendants breached by failing to make the initial, contractual payments.

    Accordingly, the only question is whether plaintiff's allegations support a claim that defendants breached by not making the additional payments contemplated in the two contracts. Defendants argue that the unambiguous language of the contracts does not support plaintiff's theory of breach and that the claims must be dismissed, at least as pleaded. (Defs.' Br. (dkt. #21) 7.) Specifically, they contend that the Genex contract contemplates an additional $100,000 payment *if* 500 units of lab-quality semen was collected and $325,000 *if* the bull was activated. (*Id.* at 8.) They similarly contend that the Alta contract contemplates payment of $34,512 in cash or $43,140 in credit *if* it exercised the option to purchase the bull and a $165,488 bonus *if* Alta released the bull. (*Id.* at 8-9.) As defendants point out, other than alleging Rock Hills' performance by

7

delivery of the bulls, which triggered payments of the initial amounts, plaintiff does not allege that any of the other conditions triggering contingencies occurred, making any additional payments due. Therefore, defendants assert, plaintiff has failed to allege any breach by defendants.

Plaintiff disputes defendants' reading of the contracts, contending that the additional payments were due not *if* but *when* the enumerated conditions were met. (Pl.'s Opp'n (dkt. #31) 8.) But even under plaintiff's interpretation of the contract, the additional payments were still not due until the conditions precedent were satisfied. *See Locke v. Bort*, 10 Wis. 2d 585, 588, 103 N.W.2d 555 (1960) ("[T]he fact upon which the condition is based must occur 'before a duty of immediate performance of a promise arises,' unless the same has been excused.") (quoting Restatement, 1 Contracts, p. 359, § 250(a)). And, as noted, plaintiff failed to allege in its complaint that any of the conditions precedent had occurred, nor can this court simply infer such a material allegation for plaintiff to survive a motion to dismiss. *See Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) (dismissing breach of contract claim where complaint contained no allegation regarding the performance of the conditions precedent); *ABC Acquisition Co., LLC v. Koziel*, No. 18 CV 8420, 2019 WL 3733289, at *4 (N.D. Ill. Aug. 8, 2019) ("Koziel's counterclaim also fails to allege that a necessary condition precedent was satisfied. Such an allegation is 'essential.'").

Of course, defendants' victory may prove pyrrhic if plaintiff can replead in good faith that, while the original complaint fails to adequately state a claim for breach, the deficiencies identified in its breach claim are met. *See Runnion ex rel. Runnion v. Girl Scouts*

*of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519-20 (7th Cir. 2015) ("Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.") (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). Specifically, plaintiff in its brief expresses "concern" that some of the conditions precedent may have been met without payment under the terms of the contract. (Pl.'s Opp'n (dkt. #31) 8.) If plaintiff can plead in good faith, even upon information and belief, that this is actually so, then an amended complaint to that effect can likely proceed. If not, then its contract claim is at an end, as are its related claims for breach of the Uniform Commercial Code ("UCC").[2]

A final note is due with respect to these claims: plaintiff implies at various points that it expected defendants to complete the conditions precedent. (*See* Pl.'s Opp'n (dkt. #31) 8 ("Defendants['] position that they can skirt liability simply because they didn't turn a contractual key of 'activation/release' to unlock payment is disingenuous."); 11 ("Defendants . . . fail[ed] to diligently fulfill the alleged contractual payment triggers."). General contract principles hold that, where a condition precedent is within the control of a party to the agreement, that party's failure to perform the condition precedent may under some circumstances constitute a breach. *See* 23 Williston on Contracts § 63:6 (4th ed.). Again, as currently plead, it is not clear from plaintiff's complaint *or* its brief that this is its

---

[2] For the reasons explained above, plaintiff will be permitted to replead its UCC claim against Genex, but since the Alta contract is governed by Canadian law, the applicability of the UCC is in doubt. The court will, however, leave to plaintiff in the first instance to decide in good faith whether a UCC or a Canadian equivalent claim may apply.

actual claim. Moreover, although recognizing that an implied duty of good faith and fair dealing exists under Wisconsin law and perhaps Alberta law, this argument would appear to be in significant tension with the express language in each contract that: (1) defendants were not obligated to remove or release the bulls, and (2) the neither party would be held liable for any unrealized economic benefit. (*See* Compl. Ex. A & B (dkt. #1-2) 10, 12.) Regardless, because this alternate theory of breach was not developed by plaintiff, the court will not pass judgment on its validity unless expressly pleaded in good faith in an amended complaint.

## II. Remaining Claims

As for the remaining claims, plaintiff recites the elements of each cause of action, but other than conclusory allegations, it fails to assert *any* facts to support these claims. As already discussed above, conclusory allegations alone are not sufficient to support a cause of action. *Ashcroft*, 556 U.S. at 678. Thus, plaintiff will be permitted to replead its promissory estoppel and breach of the covenant of good faith and fair dealing claims, as it is not certain that these claims would be futile if properly pleaded.[3] As discussed below,

---

[3] Because plaintiff's theory of breach of contract is supposedly "duplicative" of its breach of good faith claim, defendants also contend that the latter claim should be dismissed regardless of the viability of the former. (*See* Defs.' Reply (dkt. #33) 7.) Certainly, where a breach of contract is found, a breach of good faith claim resting on the same conduct may be dismissed as recovery for both claims would be duplicative. *Ladopoulos v. PDQ Food Stores, Inc.*, 2002 WI App 165, ¶ 24, 256 Wis. 2d 694, 647 N.W.2d 468. However, a breach of good faith claim may still be pleaded as an alternative breach of contract claim. *See Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 802 (W.D. Wis. 2019) (a breach of the implied covenant of good faith and fair dealing claim "may be pleaded as an alternative to the breach of contract claim"); *Maryland Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1509 (E.D. Wis. 1996) (finding that despite overlap, common law breach of contract and good faith and fair dealing claims could be pleaded in the alternative). Again, in the first instance, the court will leave to plaintiff whether similar treatment is appropriate under Alberta law.

however, its other claims are plainly futile, and plaintiff will *not* be permitted to resurrect them in an amended complaint.

Taking up plaintiff's claim that defendants violated the New Mexico Unfair Trade Practices Act ("UPA"), N.M. Stat. Ann. § 57-12-3, as an initial matter, there is an obvious question as to whether choice-of-law principles bar this claim altogether. As noted, the parties agree that Wisconsin law governs plaintiff's non-contract claims, and there is no Wisconsin law equivalent to the New Mexico UPA, nor even a suggestion as to why Wisconsin choice-of-law rules might apply the UPA on the facts alleged. Even if not barred by choice of law principles, the claim must be dismissed because plaintiff has failed to state a claim under the UPA. *See Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 611 (6th Cir. 2001) (where plaintiff brought Michigan statutory claim, but question remained as to whether Ohio law governed the entire case, court reasoned that "even if the choice of law clause does not bar the [Michigan statutory] claim" plaintiff had failed to state a claim under the Michigan law). As defendants point out, "the UPA gives standing only to buyers of goods and services." *Hicks v. Eller*, 280 P.3d 304, 309 (N.M. Ct. App. 2012). Plaintiff attempts to argue that it is a "buyer" because the contracts stated that it had the option to purchase semen from defendants. (Pl.'s Opp'n (dkt. #31) 12-14.) Yet nowhere does plaintiff suggest that it actually made any purchases. Accordingly, plaintiff lacks standing to sue under the UPA.

Plaintiff's negligent misrepresentation claim is also barred by the economic loss doctrine and must be dismissed. The economic loss doctrine "works to prevent a party to a contract from employing tort remedies to compensate the party for purely economic

11

losses arising from the contract." *Grams v. Milk Prod., Inc.*, 2005 WI 112, ¶ 2, 283 Wis. 2d 511, 699 N.W.2d 167.  Plaintiff insists that this doctrine does not bar its negligence misrepresentation claim, which only applies to "claims for economic loss asserted by buyers when the product does not perform." (Pl.'s Opp'n (dkt. #31) 14.)  To the contrary, at least under Wisconsin law, the doctrine applies broadly to any party -- and not just "buyers" -- seeking to recover economic losses related to a commercial transaction.  *State Farm Mut. Auto Ins. Co. v. Ford Motor Co.*, 592 N.W.2d 201, 208 (Wis. 1999).  Moreover, Wisconsin courts have repeatedly held that the economic loss doctrine applies to negligent misrepresentation claims.  *See Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 30, 283 Wis. 2d 555, 699 N.W.2d 205; *Selzer v. Brunsell Brothers, Ltd.*, 2002 WI App 232, ¶¶ 31-39, 257 Wis.2d 809, 652 N.W.2d 806; *Prent Corp.*, 2000 WI App 194, ¶ 21, 238 Wis.2d 777, 618 N.W.2d 201.  Here, plaintiff has alleged only economic losses related to the commercial transactions between it and defendants.  The economic loss doctrine provides that plaintiff cannot seek tort remedies to compensate for these alleged losses, and the court will accordingly dismiss this claim.

As for plaintiff's claim that defendants "owed a fiduciary duty of upmost good faith and loyalty to Plaintiff" and that they breached that duty (Compl. (dkt. #1-2) ¶¶ 35, 36), the Wisconsin Supreme Court has explained that "[a] fiduciary relationship arises from a formal commitment to act for the benefit of another (for example, a trustee) or from special circumstances from which the law will assume an obligation to act for another's benefit." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985).  In contrast, "[a] contract, standing alone, is insufficient to create

a fiduciary duty." *Jackson v. McKay-Davis Funeral Home, Inc.*, 830 F. Supp. 2d 635, 648 (E.D. Wis. 2011) (applying Wisconsin law). Plaintiff argues that a fiduciary relationship arose because it "placed absolute trust and confidence in Defendants that, after Rock Hill completed it obligations of delivering the bulls, Defendants would use the utmost care in ensuring the bulls would be used to 'adequately compensate[]' Rock Hill." (Pl.'s Opp'n (dkt. #31) 17.) Yet this argument suggests nothing greater than the typical expectations held by parties to a contract, which is honored in Wisconsin by recognition of an implied duty of good faith and fair dealing in all contracts as previously discussed. Moreover, a fiduciary relationship does not "arise out of every circumstance where there is a relationship of trust and confidence between the parties." *Boeck*, 127 Wis. 2d at 136. Accordingly, plaintiff has also failed to demonstrate that this claim has any potential merit.

Finally, as to plaintiff's "debt and money due" claim, there appears to be no such cause of action under Wisconsin law, and it will be dismissed as well. Regardless, this claim does not appear to state a separate theory of liability, but is instead simply a conclusory request for "debt and money" owed under a breach of contract claim, so this dismissal does not as a practical matter affect plaintiff's possible recovery would it file a timely, amended complaint asserting specific, material breaches of the contracts in dispute.

## ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss (dkt. #20) is GRANTED.

2) Plaintiff may have leave to file an amended complaint within twenty-one (21) days, consistent with this opinion.

3) Should plaintiff file an amended complaint, defendants shall have twenty-one (21) days to answer, move or otherwise respond.

4) Should plaintiff fail to file an amended complaint within twenty-one days of this order, the case will be dismissed with prejudice and with costs awarded to defendants.

Entered this 1st day of December, 2020.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge